1
2
3
4

Daniel T. Doria, Pro Se
989 S. Main St. Ste A PMB 407
Cottonwood, AZ 86326
Telephone: 702.279.5326
E-mail: danieldoria105@yahoo.com

___X___ FILED          ___ LODGED
_____ RECEIVED       ___ COPY

OCT 1 7 2023

CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY_____ DEPUTY

5

6

UNITED STATES DISTRICT COURT

7

DISTRICT OF ARIZONA

8

9

**CV23-08580-PCT-SPL**

10
11
12
13
14
15

Daniel T. Doria, *an individual*
*Plaintiff,*
v.
Consumer Cellular Inc.
*Defendant*

**COMPLAINT FOR VIOLATIONS OF
THE ARIZONA CONSUMER FRAUD
ACT (A.R.S. 44-1521) AND THE
LANHAM ACT (15 U.S.C. 1125) AND
REQUEST FOR TRO AND
TEMPORARY AND PERMANENT
INJUNCTIVE RELIEF**

**DEMAND FOR JURY TRIAL**

16

17

18

19

THIS DOCUMENT IS NOT IN PROPER FORM ACCORDING
TO FEDERAL AND/OR LOCAL RULES AND PRACTICES
AND IS SUBJECT TO REJECTION BY THE COURT.

REFERENCE LRCnvP.S. 4
(Rule Number/Section)

20
21
22
23
24
25
26
27
28

COMPLAINT

i.

I, the Plaintiff, Daniel Doria, an individual, allege as follows for my Complaint against Defendant, Consumer Cellular ("CC") for consumer fraud in violation of A.R.S. 44-1521 and false descriptions in violation of 15 U.S.C. 1125, The Lanham Act of 1946.

## **INTRODUCTION**

1. Consumer Cellular is a nationwide wireless provider, selling consumer wireless services that operate on Verizon Wireless, T-Mobile, and AT & T wireless networks.

2. On or about January 10, 2022, I signed up for service with Consumer Cellular and transferred service from Verizon Wireless to CC. Consumer Cellular and I entered in a 29 page contract with each other which comprised it's total user terms and conditions for wireless.

3. On that date, and to this day, CC made claims that if offered for sale, an unlimited internet plan for $50.00 per month plus taxes and fees. Defendant's advertisements stated further that after 50GB of high-speed internet had been used in a billing cycle, it would throttle internet speed to 1.5Mb per second, nearly 2.5x the speed of its network providers, Verizon Wireless, AT&T and T-Mobile. This language is used as advertisement to entice customers on both the defendant's website, as well as in its terms and conditions. The language is false.

4. On May 11, 2023, Consumer Cellular disabled my internet usage completely, sending me a text message with the following language:

"For your protection, web service for 702-279-5326 has been disabled due to extreme use. Call Consumer Cellular at 888-345-5510. Other services remain Active."

Upon investigating through a phone call to the Defendant, it informed me that if users use in excess of 10GB of internet in a 72 hour period, their internet will be

DANIEL T DORIA
989 S. Main St. Ste A
PMB 407
Cottonwood, AZ 86326
702.279.5326

**COMPLAINT**                    1

1  Disabled.

2      5. CC did not disclose this prior to entering into our contract. This term of use is

3  a material difference between unlimited internet usage, and limited internet usage. In

4  fact, this language is also false. CC only executes disabling of data in this fashion after

5  the initial 50GB of data has been consumed. Defendant's disabling is not, as its text

6  message says, to protect me the consumer but rather, an effort to control the limits of

7  internet use by its clients, once they have exceeded the 50GB high speed cap.

8      6. All other carriers who's networks CC operates on provide a genuine unlimited

9  internet use for what they similarly call an 'Unlimited Data' plan.

10      7. Defendant completely disabled data again on August 11, 2023, and again on

11  August 14, 2023, fourteen days before the fall semester was set to begin at Yavapai

12  College, one of two colleges that I attend triple full-time. On August 11, 2023 and

13  August 14, 2023, I was forced to place a total of 7 phone calls to the Defendant to have

14  internet restored. On each fall, save for the last, CC stated that internet would be

15  restored in minutes, and it was not. All of my schooling is done on the internet.

16  Without internet, I am not able to attend classes.

17      8. No utilities, including gas, water, and electric, or other wireless carriers for

18  that matter, advertise a plan of unlimited access to the utility that then disconnect the

19  utility when a private non-disclosed amount of the utility is used within a specified

20  time window. For competing wireless carriers, limited internet plans specify how much

21  internet can be used, and are then throttled to .6MB per second when that limit has

22  been reached or in the case of limited prepaid plans, the internet will automatically

23  disable. My schooling, home security, and entertainment rely on two wireless carriers,

24  AT&T and Consumer Cellular.

25                              **PARTIES**

26      9. I, the Plaintiff, Daniel Doria, am an individual. I reside at the, Yavapai

27  College campus, at 601 W. Black Hills Dr. Trlr #5, Clarkdale, AZ, 86324.

28

DANIEL T DORIA
989 S. Main St. Ste A
PMB 407
Cottonwood, AZ 86326
702.279.5326

COMPLAINT                                    2

10. The Defendant, Consumer Cellular, is a wireless service provider with its principal place of business at 15605 SW 72nd, Ave, Tigard, Oregon, 97224.

## JURISDICTION AND VENUE

11. Defendant is subject to this court's power through original subject matter, general, personal, and diversity jurisdiction.

12. Venue is proper. I the Plaintiff am a resident and student of Arizona. Defendants are entities of the State of Oregon conducting interstate commerce through its wireless service distribution in to Arizona. The events alleged herein occurred in Arizona.

## FACTUAL ALLEGATIONS APPLICABLE TO ALL CLAIMS

16. When deciding to cancel my wireless service with Verizon Wireless, I investigated Consumer Wireless' service offering in detail.  Specifically, I utilized at the time, approximately 300GB of internet, with a need for a mixture of low speed and high-speed internet. I also have 100GB of wireless service through AT&T and concluded that I could moderate my data consumption to between 150GB and 200GB per month between AT&T and Consumer Wireless.

17. When deciding to transition to CC, I researched it's unlimited data plan, the only plan that would be sufficient for my needs. In my research, I discovered that CC offered not only the unlimited plan that I would need, but that it also offered 2.5x the throttled speeds of its market counterparts such as Verizon Wireless, enabling me to continue streaming class videos, audio and more through my entire 30-day billing cycle.

18. I estimated that I would use between 50GB and 100GB per month with CC and my 100GB limit with AT&T.

19. CC states that this is how their unlimited plans operate on their home website, in advertising pamphlets, and in the company's 29 page terms and conditions.

DANIEL T DORIA
989 S. Main St. Ste A
PMB 407
Cottonwood, AZ 86326
702.279.5326

**COMPLAINT**                                                                 3

20. CC's advertising indicates that at 50GB of usage, the plan will be throttled to 1.5 MBps for the remainder of the billing cycle. This is a false or only partially true statement, omitting material fact.

21. There is no public facing document, produced by CC, that indicates additional limitations to the plan's usage.

22. In addition reviewing all plans in writing, I placed a phone call to CC's 100% U.S. based customer call center, and confirmed the terms and restrictions of the plan.

23. CC placed all of this language in it's plans knowing that in fact, if a user passed the 50GB mark, and continued to use 10GB in a 72 hour period, the internet would be completely severed.

24. CC intended on myself and the rest of the public to rely on these false representations about the "Unlimited Plan".

25. As a result of CC's false claims, I spent in excess of 12 hours on the phone with CC to remedy the issue, purchased additional internet through AT&T, lost time preparing for a coming school semester, temporarily lost the use of my home security system, temporarily lost inbound call access to the VOIP for my at-home pet-sitting service, temporarily lost the ability to place online pick-up orders for groceries, and temporarily lost the ability to log into my health-care provider's website and request or make modifications to upcoming appointments. All other capabilities requiring the internet, were temporarily lost.

26. Based on all of CC's representations, I had the right to rely on it's representations as truth.

27. CC knew at the time it contacted my usage plan that it would in fact suspend my service if I passed the 50GB usage mark, and then consumed 10GB in a 3 day period.

28. I was unaware that the statements made by CC were false at the time I decide to purchase service through CC.

DANIEL T DORIA
989 S. Main St. Ste A
PMB 407
Cottonwood, AZ 86326
702.279.5326

COMPLAINT                                                    4

29. I spoke to CC on many occasions following the initial and second suspension, and gave it an opportunity to remove the restricting feature from my account, or do add the modified language to our existing terms and conditions. Speaking to CC's legal counsel, Defendant refused both proposed solutions.

30. The language shared with myself and the public relating to CC's unlimited plans through its website and Terms and Conditions are as follows:

- **CC Website: What happens if I go over my plan's limit?**
    - If you go over your plan's limit of minutes or data during the month, we'll automatically upgrade you to a plan that covers the amount you've used. This way, you are guaranteed to get the best possible rate for your monthly usage, with absolutely no overage fees. Your bill for the month will include the upgraded plan. For customers enrolled in our largest data plan, access to high speed data will be reduced if the plan's data limit is exceeded, and you will experience slower speeds for the remainder of the billing cycle. If this occurs, you can also contact customer service to review options for purchasing additional amounts of high-speed data.

- **CC Website:** If data usage exceeds 50GB, you will experience slower data speeds for the remainder of the billing cycle.
- **CC T&C 1.3 Can Consumer Cellular Change My Service Terms And Rate? Can I Change My Service Terms And Rate?**
    - We may change ... your Services at any time. We will provide you with notice of material changes ...
    - ... For customers enrolled in our largest data plan, access to high speed data will be reduced if the plan's data limit is exceeded, and you will experience slower speeds for the remainder of the billing cycle...

31. CC through its own terms and conditions is permitted very limited control over disconnection of service which includes prohibited uses of it's network, which none of my activity would qualify under. These terms are as follows:

DANIEL T DORIA
989 S. Main St. Ste A
PMB 407
Cottonwood, AZ 86326
702.279.5326

**COMPLAINT**                                             5

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**CC T&C 6.2** - Consumer Cellular's Rights to Ensure Compliance: You agree that we have the right to take any and all actions necessary to enforce this Section 6.2 if you use our data Services in any manner that is prohibited, including, but not limited to, the following actions: • We may engage in any reasonable network management practice to enhance Services, to reduce network congestion, to adapt to advances and changes in technology, and/or to respond to the availability of wireless bandwidth and spectrum; • We may reduce your data throughput speeds at any time or place if your data usage exceeds an applicable, identified usage threshold during any billing cycle, even if your plan is designated as an unlimited usage plan. We will provide you with advanced notice of the usage threshold applicable to your data plan or any changes to the applicable usage threshold either by a bill insert, email, text message or other appropriate means; and • We may interrupt, suspend, cancel or terminate your Services without advance notice.

32. Contrary to CC's terms and conditions, and according to its unwritten policy non-mutually agreed to policies cited by CC's telephone representatives, **all activity** is prohibited activity when using its purported 'Unlimited' plan, as long as that activity exceeds 10GB of usage in a 72 hour period. That is not an unlimited plan. Specifically, that is limited to 10GB of usage in a 72 hour period after the first 50GB of internet has been used.

33. CC has failed to remedy this misrepresentation and rejected a formal request made through the AZ AG's complaint board to refund payments made to CC.

34. Every reasonable effort has been made to rectify the matter with CC to no avail.

DANIEL T DORIA
989 S. Main St. Ste A
PMB 407
Cottonwood, AZ 86326
702.279.5326

**COMPLAINT**                                6

## FIRST CAUSE OF ACTION

### VIOLATION OF THE LANHAM ACT OF 1946

### (15 U.S.C. §1051, *ET SEQ*)

35. The allegations of paragraphs 1 through 34, inclusive, are incorporated herein by reference as if set forth below.

36. Because my remedy at law is inadequate, I seek in addition to damages, temporary, preliminary, and permanent injunctive relief to require CC to disclose its intent to restrict consumer usage of its network.

37. I rely on internet service for most of my functions. Without full disclosure of what may result in restriction, there is no way to plan for CC's unwritten revisions to its terms and conditions affecting my functions as a consumer.

38. Defendant's acts have a very specific purpose, designed to limit the amount of data used by its customers, more specifically it's high data users. It's reasoning that it desires to limit usage to less than 10GB per 72 hours period fails because it will allow a consumer to use 5GB, 10GB, or 20GB per day so long as it has not reached the 50GB threshold, and that is when it's unwritten policies go into effect. It has the right to restrict usage after 50GB of it's unlimited plan, but only with full written disclosure to its markets.

39. I have a substantial likelihood of success on the merits of my case because of Defendant's acts and omissions misrepresenting and contrary to its own drafted and advertised Terms and Conditions.

40. Defendant's acts were deceptive, fraudulent, oppressive and done with conscious disregard of the rights of myself as a consumer and those similarly situated, all within the meaning of Arizona's Consumer Fraud Act, and the United States' Lanham Act in that CC knowingly represented that its $50.00 pricing plans were unlimited when they were certainly and precisely limited. CC did so with a calculable intent to benefit itself at the expense of myself as a consumer and those

DANIEL T DORIA
989 S. Main St. Ste A
PMB 407
Cottonwood, AZ 86326
702.279.5326

COMPLAINT                                    7

1  similarly situated. I am entitled to damages in an amount to be determined at trial, as

2  well as injunctive relief, penalties, and punitive damages.

3  **SECOND CAUSE OF ACTION**

4  **VIOLATION OF THE ARIZONA CONSUMER FRAUD ACT (ACFA)**

5  **(A.R.S. §§ 44-1521, *ET SEQ*)**

6  41. The allegations of paragraphs 1 through 40, inclusive, are incorporated

7  herein as if set forth fully below.

8  42. I made decisions as a consumer based on CC's false and fraudulent

9  advertisements.

10  43. CC's advertisements and terms and conditions are deceptive, an unfair

11  practice, a false promise and a misrepresentation made by a seller or advertiser or a

12  service.

13  44. CC's advertisements and terms and conditions conceal, suppress, omit and

14  fail to disclose its precise data plan limitations of 10GB of use in a 72 hour period

15  following the use of 50GB of internet in a billing cycle.

16  45. CC's misrepresentations were material to me as a consumer, and are material

17  to any consumer base that relies heavily on internet for functionality.

18  46. CC knew the representations it made were false, and could not have been

19  unaware.

20  47. CC intended and did so achieve the goal of consumer reliance on these false

21  advertisements.

22  48. Without access to CC's private policies, I had no way to know the statements

23  made by CC were false.

24  49. I relied on CC's statements to make a buying decision.

25  50. I had the right to rely on CC's false claims.

26  51. I was injured as a direct result of CC's false advertisements.

27

28

## PRAYER FOR RELIEF

WHEREFORE, I demand judgement against the Defendant as follows:

## FIRST CAUSE OF ACTION

### VIOLATION OF THE LANHAM ACT OF 1946

### (15 U.S.C. §1051, *ET SEQ*)

1.   In accordance with applicable law, including 15 U.S.C. § 1051, awarding a Temporary Restraining Order, a Preliminary Injunction Order, and a Permanent Injunction as follows: (a) ordering Defendant to disclose the omitted language which provides for a precise limitation to its Unlimited Data Plan.

2.   Awarding damages in an amount to be determined at trial.

3.   Awarding disgorgement in an amount to be determined at trial.

4.   Awarding compensatory damages in an amount to be determined at trial.

5.   Awarding punitive damages in an amount to be determined by the court.

6.   Awarding penalties under the law.

7.   Awarding fees, costs, and interest.

8.   Awarding such other relief as the Court deems appropriate.

## SECOND CAUSE OF ACTION

### VIOLATION OF THE ARIZONA CONSUMER FRAUD ACT (ACFA)

### (A.R.S. §§ 44-1521, *ET SEQ*)

1.   In accordance with applicable law, including A.R.S. §§ 44-1521, awarding a Temporary Restraining Order, a Preliminary Injunction Order, and a Permanent Injunction as follows: (a) ordering Defendant to disclose the omitted language which provides for a precise limitation to its Unlimited Data Plan.

DANIEL T DORIA
989 S. Main St. Ste A
PMB 407
Cottonwood, AZ 86326
702.279.5326

COMPLAINT

9

1.  Awarding damages in an amount to be determined at trial.

2.  Awarding disgorgement in an amount to be determined at trial.

3.  Awarding compensatory damages in an amount to be determined at trial.

4.  Awarding punitive damages in an amount to be determined by the court.

5.  Awarding penalties under the law.

6.  Awarding fees, costs, and interest.

7.  Awarding such other relief as the Court deems appropriate.

DATED: October  13, 2023

Respectfully submitted,

/s/

Daniel Thomas Doria, Pro Se
*an individual*
702-279-5326(telephone)
989 S. Main St. Ste. A
PMB 407
Cottonwood, AZ, 86326

## **DEMAND FOR JURY TRIAL**

I the Plaintiff, Daniel Doria, hereby demand a jury trial on those issues triable by a jury.

DATED: September 13, 2023

Respectfully submitted,

/s/

Daniel Thomas Doria, Pro Se
*an individual*
702-279-5326(telephone)
989 S. Main St. Ste. A
PMB 407
Cottonwood, AZ, 86326

DANIEL T DORIA
989 S. Main St. Ste A
PMB 407
Cottonwood, AZ 86326
702.279.5326

COMPLAINT                                                                10